## UNITED STATES v. ONE 1950 BUICK COACH AUTO. et al.

### Civ. A. 530.

United States District Court
W. D. Kentucky, at Paducah.
Aug. 23, 1951.

David C. Walls, U. S. Atty., Norris W. Reigler, Asst. U. S. Atty. Louisville, Ky., for libelant.

Raymond C. Schultz, Paducah, Ky., for intervening petitioner, Robert G. Looney.

SHELBOURNE, Chief Judge.

April 24, 1950, the Government filed its libel against the property listed in the caption for forfeiture for breach of the provisions of Sections 2831, 2860 and 3116 of Title 26 U.S.C.A.

June 3, 1950, Robert G. Looney intervened, claiming to be the owner of the Buick Automobile, and asked dismissal of the libel and the return to him of the Buick.

Trial was had December 15, 1950. On the evidence heard, the Court makes the following

Findings of Fact

1. On or about April 1, 1950, Investigators of the Alcohol Tax Unit, assisted by State Officers, seized in Fulton, Fulton County, Kentucky a 1950 Buick automobile and twenty-one wine gallons of whiskey being transported in said automobile and which whiskey had been purchased by Looney from Ford's Liquor Store, which was operated by P. C. Ford and James R. Hogan.

2. P. C. Ford and James R. Hogan had not paid the Internal Revenue Tax authorizing them to engage in business as wholesale liquor dealers and did not have displayed, conspicuously or at all, on the outside of the place of business conducted by them, the sign required by Section 2831 of Title 26 U.S.C.A.

3. April 1, 1950, intervenor Robert G. Looney was not the holder of a license authorizing him to engage in the retail liquor business, but purchased whiskey to be sold at retail at his home in Paris, Tennessee, where he and his wife Beulah Looney conducted in the basement of their home the B & B Club. Beulah Looney was the holder of a retail liquor dealer's tax stamp issued to her in the name of Beulah Harding, covering the period from July 1, 1949 to June 30, 1950.

Beulah Harding and intervenor Robert Looney married in October 1949.

4. On April 6, 1950, Robert Looney procured a retail liquor dealer's stamp, which was made retroactive from October 1949 and covering the period from that date to June 30, 1950.

In his application for the Federal Retail Liquor Dealer's Occupational Tax Stamp, Intervenor designated himself and signed the application as "Robert G. Looney, partner".

Thomas O. Patteson, one of the Alcohol Tax Unit Agents, who arrested Looney and seized the automobile and its contents, testified that when arrested Looney said he thought he had a retail liquor dealer's tax stamp and thought that he was safe and that Looney also told him that the operation of the B & B Club had not been profitable and that he and his wife had engaged jointly in the retail liquor business hoping thereby to increase their profits and pay the indebtedness on their business.

At the trial, Looney denied making such statements with respect to his participation in the sale of the whiskey at retail, but made no denial of his application for and receipt of the retail liquor dealer's stamp. He testified that he had no interest in the B & B Club, derived no profit from it and had never engaged in the business of selling whiskey.

It was proven in the evidence by Curtis Hall, Chief Deputy Sheriff of Henry County, Tennessee, by Phillip Watson, Mayor of Paris, Tennessee and Boyd Lampkin, Buick Dealer of Paris, Tennessee, that the intervenor Looney had a good reputation and had never been, in any wise, by reputation or record, identified with handling or dealing in whiskey.

5. Robert G. Looney, on April 1, 1950, purchased at a retail liquor store operated by J. R. Hogan and P. C. Ford, twenty-one gallons of whiskey for which Looney paid the "fair trade retail price".

6. On April 1, 1950, neither J. R. Hogan nor P. C. Ford, severally or jointly, possessed a wholesale liquor dealer's stamp and were not authorized to sell

whiskey at wholesale. There was not kept or maintained conspicuously or at all on the outside of the place of business conducted by them a sign containing the words "Wholesale Liquor Dealer".

## Conclusions of Law

1. There was little dispute with respect to the essential facts in this case and the argument of Counsel is centered about the proper construction of Section 2831 of Title 26 U.S.C.A., which provides that every person engaged as a wholesale liquor dealer shall place and keep conspicuously on the outside of the place of such business a sign exhibiting in plain and legible letters, not less than three inches in length, painted in oil colors or guilded, and of a proper and proportionate width, the name of the wholesale dealer, with the words "Wholesale Liquor Dealer."

The Section then provides that " * * * every person who knowingly receives at, carries or conveys any distilled spirits to or from, any such * * * store, * * * on which such sign is not placed and kept, shall forfeit all horses, carts, drays, wagons, or other vehicle or animal used in carrying or conveying such property aforesaid," and shall be fined or imprisoned within the limits set forth in the section.

 It is the contention of the Intervenor that to establish guilt under this section, it is necessary that the Government prove not only that the alleged violator have knowledge of his receipt of distilled spirits, but it must be proven also that he had knowledge that no sign, as required by the statute was kept or maintained.

It is the contention of the Government that it is only encumbent upon it to establish knowledge of the receipt of the distilled spirits and prove that no sign was kept.

The contention on the part of the Government seems to be the only reasonable construction and this Court so construes the statute.

11. Section 2860 of Title 26 provides provides that it shall not be lawful for any retail liquor dealer to purchase or receive distilled spirits in quantities greater than twenty gallons from any person other than an authorized wholesale liquor dealer.

The Court is of opinion that "Retail Liquor Dealer", as used in this section refers only to a retail liquor dealer who is the holder of the requisite Federal Tax Stamp, authorizing him to engage in business of a retail liquor dealer.

The purchase by the intervenor Looney of a retail dealer's tax stamp on April 6, 1950, and causing same to be made retroactive to October 1949, was not sufficient to constitute guilt under this section, for the purchase of more than twenty gallons of distilled spirits on April 1, 1950.

## Conclusion

The Court is of the opinion that the intervening petition of Robert G. Looney should be dismissed and an order providing for such dismissal is this day entered.